1   Manuel A. Martinez (SBN 115075)
    STEIN & LUBIN LLP
2   Transamerica Pyramid
    600 Montgomery Street
3   14th Floor
    San Francisco, CA  94111
4   Telephone:    (415) 981-0550
    Facsimile:    (415) 981-4343
5   mmartinez@steinlubin.com

6   Attorneys for Plaintiffs
    CCIP, L.P. and Contra Costa Industrial Park II, L.P.

7

ORIGINAL
FILED

AUG 2.2 2007

RICHARD W. WIEKING
CLERK, U.S. DISTRICT COURT
NORTHERN DISTRICT OF CALIFORNIA

E-filing

8              UNITED STATES DISTRICT COURT

9              NORTHERN DISTRICT OF CALIFORNIA

10                 SAN FRANCISCO DIVISION

11

12  CCIP, L.P. and CONTRA COSTA              Case No. **C 07  4344**
    INDUSTRIAL PARK II, L.P.,
13                                           **JL**
                   Plaintiffs,               COMPLAINT FOR:
14
    v.                                       1) QUIET TITLE;
15                                           2) ENCROACHMENT; AND
    UNITED STATES OF AMERICA and             3) DECLARATORY RELIEF
16  DOES 1-100,

17                 Defendants.

18

19          Plaintiffs CCIP, L.P. and Contra Costa Industrial Park II, L.P. and ("Plaintiffs")

20  for their complaint allege as follows:

21                        **JURISDICTION**

22          1.     This Court has original exclusive jurisdiction over this civil action pursuant

23  to 28 U.S.C. §1346(f) because it seeks to quiet title to an interest in real property claimed by the

24  United States.

25                  **INTRADISTRICT ASSIGNMENT**

26          2.     Pursuant to Local Rule 3-2(d) this civil action may be properly assigned to

27  the San Francisco Division or the Oakland Division because it seeks to quiet title to an interest in

28  real property located in Contra Costa County, California.

5160173/354179v1                    1

**PARTIES**

3.    Plaintiff CCIP, L.P. is a limited liability partnership organized under the laws of the State of California, and doing business in the County of Contra Costa, State of California.

4.    Plaintiff Contra Costa Industrial Park II, L.P. is a limited liability partnership organized under the laws of the State of California, and doing business in the County of Contra Costa, State of California.

5.    Defendant United States of America ("Defendant") is the sovereign Federal government of the United States of America.

6.    Plaintiffs is ignorant of the true names and capacities of the remaining Defendants sued herein as Does 1 through 100 (the "Doe Defendants"), and therefore sue those Doe Defendants by such fictitious names.  Plaintiffs will amend this Complaint to allege their true names and capacities when ascertained.  Plaintiffs is informed and believes and, on that basis, alleges that each of the Doe Defendants also claim a legal or equitable interest in the Plaintiffs Property and/or in the other property interests described in this Complaint.  Such claims also constitute a cloud on Plaintiffs' right, title and interest in and to the Plaintiffs Property and/or the other property interests described herein.

**GENERAL ALLEGATIONS**

7.    Plaintiffs are the holder of all right, title, and interest in and to that certain real property commonly known as 1501 Loveridge Road, Pittsburg, Contra Costa County, California, APN No. 073-230-033-0/073-230-032-2, and more particularly described in Exhibit A hereto, incorporated herein by reference (the "Property"), as tenants in common, and are entitled to possession of the Property.

8.    Defendant is the holder of all right, title, and interest in and to that certain real property commonly known as 1451 Loveridge Road, Pittsburg, Contra Costa County, California, APN No. 073-230-015-7 (the "Government Property").

9.    The Government Property is entirely surrounded by the Property.

10.    Plaintiffs are informed and believe that in or about 1967, the Property was

5160173/354179v1

2

COMPLAINT

1   owned by United States Steel Corporation ("U.S. Steel") and was used as a pipe mill.

2           11.    Plaintiffs are informed and believe that in or about 1967, the Government

3   Property was owned by Defendant and was used as a U.S. Naval X-Ray Facility.

4           12.    Plaintiffs are informed and believe that on or about November 14, 1967,

5   U.S. Steel recorded a grant of easement in the Official Records of the Office of the Recorder of

6   Contra Costa County, State of California as Document No. 74740 granting to Defendant an

7   easement over a certain roadway on the Property described therein "for the purpose of ingress and

8   egress to and from said X-Ray Facility" (the "Access Easement"). A true and correct copy of the

9   Access Easement is attached hereto as Exhibit B and incorporated herein by reference.

10          13.    Plaintiffs are informed and believe that on or about November 14, 1967,

11  U.S. Steel recorded a grant of easement in the Official Records of the Office of the Recorder of

12  Contra Costa County, State of California as Document No. 74739 granting to Defendant an

13  easement "for the maintenance, operation, repair and replacement of a 1-1/4" underground gas

14  line" through and across a certain area of the Property described therein. (the "Gas Easement").

15  A true and correct copy of the Gas Easement is attached hereto as Exhibit C and incorporated

16  herein by reference.

17          14.    Paragraph (4) of the Gas Easement provides that the Gas Easement may be

18  terminated "upon non-use of such rights for a period of two consecutive years."

19          15.    Plaintiffs are informed and believe that Defendant has not used the Gas

20  Easement since approximately 1998.

21          16.    On or about July 12, 2007, Plaintiffs gave written notice to Defendant that

22  the Gas Easement had not been used for more than two consecutive years and that Plaintiffs were

23  terminating the Gas Easement. If the July 12, 2007 notice is ineffective for any reason, then

24  pursuant to the terms of the Gas Easement, Plaintiffs hereby give notice to Defendant that the Gas

25  Easement shall terminate thirty (30) days after service of this Complaint based on Defendant's

26  non-use of the Gas Easement for more than two consecutive years.

27          17.    Paragraph (5) of the Gas Easement, provides that upon its termination, if

28  desired by Grantor, Defendant shall "remove any and all improvements installed or constructed

5160173/354179v1                                3

COMPLAINT

1   hereunder and restore the . . . [Property] to the same or as good condition as existed when the

2   Government first exercised its rights hereunder."

3           18.     On or about July 12, 2007, Plaintiffs gave written notice to Defendant that

4   Owner demands that the Government remove all improvements installed or constructed on

5   Owner's property in connection with the Gas Easement and also restore the Property to the same

6   or equivalent condition as existed when the Government first exercised its rights under the Gas

7   Easement.

8           19.     On or about July 12, 2007, Plaintiffs gave written notice to Defendant that

9   there were various utility connections between the Government Property and the Property that

10  were designed to serve the Government Property, but which were not authorized by any

11  easements or license agreements of which Owner is aware. Such connections include electrical

12  service, sanitary sewer, storm sewer, fire suppression and domestic water.

13          20.     On or about July 12, 2007, Plaintiffs gave written notice to Defendant that

14  There is a rail spur that crosses the Property and appears to have been built to serve the

15  Government Property, but there was no recorded easement for such tracks and Plaintiffs were

16  uncertain whether the Government Property has any legal right to use a rail spur across the

17  Property.

18          21.     On or about August 16, 2007, Defendant sent a letter to Plaintiffs and

19  enclosed a written, but unrecorded, "Agreement for use and Exchange of Realty Interests and

20  Facilities" dated May 10, 1967 between Defendant and U.S. Steel (the "Unrecorded Agreement").

21  A true and correct copy of the Unrecorded Agreement is attached hereto as Exhibit D and

22  incorporated herein by reference.

23          22.     The Unrecorded Agreement provides, in relevant part, that U.S. Steel

24  agrees to convey an easement for maintenance, operation and repair of a 6" water line to the X-

25  Ray Facility, an easement for gas lines, a road easement for ingress and egress to the Government

26  Property, an easement for maintenance, operation and repair of electric transmission lines to the

27  X-Ray Facility, an irrevocable license to Defendant for the use of the railroad spur track leading

28  to the X-Ray Facility "as may be necessary to Government in the conduct of operations at its X-

5160173/354179v1                                4

1    Ray Facility, and further agreed to receive into its sewage system wastes from the X-Ray Facility.

2         23.    The Unrecorded Agreement further provides that "[t]he hereinabove

3    described instruments will be placed in escrow with Title Insurance and Trust Company, San

4    Francisco, with appropriate instructions for recording."

5         24.    Plaintiffs are informed and believe that other than the Access Easement and

6    the Gas Easement, no other easements were recorded as contemplated by the Unrecorded

7    Agreement.

8         25.    Defendant implied by its correspondence that the Unrecorded Agreement

9    created easements, licenses or other property rights over, under or across the Property for the

10   benefit of Defendant and for the benefit of any purchaser of the Government Property.

11        26.    Prior to Plaintiff's receipt of the Unrecorded Agreement on August 20,

12   2007, Plaintiffs had no notice of the existence of the Unrecorded Agreement or of the terms of the

13   Unrecorded Agreement.

14        27.    Defendant currently is conducting an on-line auction to sell the

15   Government Property and is representing to the public on a U.S. General Services Administration

16   website that the Government Property consists of 1.68 acres of improved land, approximately

17   0.94 acre of roadway easement, approximately 0.30 acre underground gas line easement, truck

18   and railroad accessibility to the building located on the Government Property, and implies that

19   there are additional utility easements and that all of the foregoing easements burden the Property.

## FIRST CLAIM FOR RELIEF
### (Quiet Title)

22        28.    Plaintiff repleads, realleges and incorporates by reference as though set

23   forth in full the allegations contained in Paragraphs 1 through 27 of this Complaint

24        29.    Defendant's claims, as alleged above, constitute a cloud on Plaintiffs' right,

25   title and interest in and to the Property.

26        30.    Plaintiff contends that: (i) the Gas Easement has been terminated by its

27   July 12, 2007 written notice, or thirty days from service of this Complaint; (ii) the Access

28   Easement was expressly granted to Defendant, and is not made appurtenant to the Government

5160173/354179v1                              5

1   Property and, therefore, the Access Easement is an easement in gross that can be exercised only

2   by Defendant, and its benefits would not pass to successor owners of the Property; (iii) the

3   Unrecorded Agreement is not binding on Plaintiffs; (iv) Defendant has no easement or license

4   over, under or across the Property for maintenance, operation and repair of any water lines; (v) ,

5   Defendant has no easement or license over, under or across the Property for maintenance,

6   operation and repair of any electric transmission lines to the X-Ray Facility, (vi) Defendant has

7   no easement or license over or across the Property for the use of the railroad spur track leading to

8   the X-Ray Facility; (vii) in the event that Defendant has some right to use the spur track across

9   the Property, it can only be used by Defendant for the conduct of operations at its X-Ray Facility;

10  (viii) Defendant has no easement, license or right to transmit its sewage system wastes from the

11  X-Ray Facility into Plaintiff's sewage system; and (ix) Defendant does not have the right to

12  convey any purported easements across the Property to a third party.

13           31.    Plaintiffs are informed and believe that Does 1-100 and all of them, dispute

14  Plaintiffs' contentions as alleged above and claim rights, titles, and/or other interests to the

15  Property which constitute clouds on Plaintiffs' right, title, and/or interest to the Property.

16           32.    Unless and until enjoined and restrained by Order of this Court, any

17  interference with or obstruction of Plaintiffs' right, title and/or interest in and to the Property and

18  will cause great and irreparable injury to Plaintiffs and its tenants.

19           33.    Plaintiffs have no adequate remedy at law for the injuries being suffered as

20  a result of Defendants' claims and encroachments over the Property.

21           34.    Plaintiffs therefore seek to quiet title against all adverse claims as of the

22  date of filing of this Complaint or such other date as may be necessary to establish its right, title,

23  and/or interest in and to the entirety of the Property because, with the exception of the limited

24  Access Easement, Defendants have no legitimate right, title, or interest whatsoever in or to the

25  Property.

26  / / /

27  / / /

28  / / /

1    WHEREFORE, plaintiff prays for judgment as set forth below.

2    **SECOND CLAIM FOR RELIEF**
    **(Encroachment)**

3

4    35.    Plaintiff repleads, realleges and incorporates by reference as though set

5    forth in full the allegations contained in Paragraphs 1 through 34 of this Complaint

6    36.    Plaintiff is informed and believes, and alleges upon such information and

7    belief, that Defendant currently has a gas line, water line(s), electrical cables and other currently

8    unknown objects running over, under or across the Property.

9    37.    Defendant's gas line, water line, electrical cables and other currently

10    unknown objects constitute nuisances and encroachments on the Property.

11    38.    Plaintiffs have demanded that Defendant remove its gas line from the

12    Property and restore the Property to the same or equivalent condition as existed when the

13    Government first exercised its rights under the Gas Easement.

14    39.    Plaintiffs hereby demand that Defendant remove its water line(s), electrical

15    cables and any other encroachments on the Property designed to serve the Government Property.

16    40.    To date, Defendant has failed or refused to remove its gas line from the

17    Property and restore the Property the same or equivalent condition as existed when the

18    Government first exercised its rights under the Gas Easement.

19    41.    Plaintiffs are informed and believe, and allege on such information and

20    belief, that Defendant is unwilling to remove its water line(s), electrical cables and other

21    encroachments on the Property designed to serve the Government Property.

22    WHEREFORE, plaintiff prays for judgment as set forth below.

23    **THIRD CLAIM FOR RELIEF**
    **(Declaratory Relief)**

24

25    42.    Plaintiff repleads, realleges and incorporates by reference as though set

26    forth in full the allegations contained in Paragraphs 1 through 41 of this Complaint.

27    43.    An actual controversy has arisen and now exists between Defendants, on

28    the one hand, and Plaintiffs, on the other hand, concerning their respective rights and interests in

5160173/354179v1                                7

1    the Property.

2           44.    Plaintiff contends that: (i) the Gas Easement has been terminated by its

3    July 12, 2007 written notice, or thirty days from service of this Complaint; (ii) the Access

4    Easement was expressly granted to Defendant, and is not made appurtenant to the Government

5    Property and, therefore, the Access Easement is an easement in gross that can be exercised only

6    by Defendant, and its benefits would not pass to successor owners of the Property; (iii) the

7    Unrecorded Agreement is not binding on Plaintiffs; (iv) Defendant has no easement or license

8    over, under or across the Property for maintenance, operation and repair of any water lines; (v) ,

9    Defendant has no easement or license over, under or across the Property for maintenance,

10   operation and repair of any electric transmission lines to the X-Ray Facility, (vi) Defendant has

11   no easement or license over or across the Property for the use of the railroad spur track leading to

12   the X-Ray Facility; (vii) in the event that Defendant has some right to use the spur track across

13   the Property, it can only be used by Defendant for the conduct of operations at its X-Ray Facility;

14   (viii) Defendant has no easement, license or right to transmit its sewage system wastes from the

15   X-Ray Facility into Plaintiff's sewage system; and (ix) Defendant does not have the right to

16   convey any purported easements across the Property to a third party.

17          45.    Plaintiffs is informed and believes and, on that basis, alleges that

18   Defendants dispute these contentions and assert adverse rights, titles, and interests in and to the

19   Property.

20          46.    Plaintiffs desires a judicial determination of its rights and interests in the

21   Property and, specifically, for a judicial determination that: (i) the Gas Easement has been

22   terminated by its July 12, 2007 written notice, or thirty days from service of this Complaint; (ii)

23   the Access Easement was expressly granted to Defendant, and is not made appurtenant to the

24   Government Property and, therefore, the Access Easement is an easement in gross that can be

25   exercised only by Defendant, and its benefits would not pass to successor owners of the Property;

26   (iii) the Unrecorded Agreement is not binding on Plaintiffs; (iv) Defendant has no easement or

27   license over, under or across the Property for maintenance, operation and repair of any water

28   lines; (v) , Defendant has no easement or license over, under or across the Property for

1  maintenance, operation and repair of any electric transmission lines to the X-Ray Facility, (vi)

2  Defendant has no easement or license over or across the Property for the use of the railroad spur

3  track leading to the X-Ray Facility; (vii) in the event that Defendant has some right to use the

4  spur track across the Property, it can only be used by Defendant for the conduct of operations at

5  its X-Ray Facility; (viii) Defendant has no easement, license or right to transmit its sewage

6  system wastes from the X-Ray Facility into Plaintiff's sewage system; and (ix) Defendant does

7  not have the right to convey any purported easements across the Property to a third party.

8        47.    A judicial determination is necessary at this time so that the parties may

9  ascertain their rights and interests in the Property.

10       WHEREFORE, Plaintiff Plaintiffs prays for judgment against Defendants as

11  follows:

12                        **On the First Claim for Relief:**

13        1.    For an Order quieting title in favor of Plaintiffs to the Property and

14  extinguishing the Gas Easement, and any other easements, licenses, or rights claimed by

15  Defendants to the Property with the exception of the Access Easement in favor of Defendant

16  only.

17                       **On the Second Claim for Relief:**

18        1.    For a mandatory injunction requiring Defendant to remove its water line(s),

19  electrical cables and other encroachments on the Property designed to serve the Government

20  Property.

21        2.    For compensatory damages, according to proof; and

22                        **On the Third Claim for Relief:**

23        1.    For a judicial determination of its rights and interests in the Property and,

24  specifically, for a judicial determination that: (i) the Gas Easement has been terminated by its July

25  12, 2007 written notice, or thirty days from service of this Complaint; (ii) the Access Easement

26  was expressly granted to Defendant, and is not made appurtenant to the Government Property

27  and, therefore, the Access Easement is an easement in gross that can be exercised only by

28  Defendant, and its benefits would not pass to successor owners of the Property; (iii) the

5160173/354179v1                              9

1   Unrecorded Agreement is not binding on Plaintiffs; (iv) Defendant has no easement or license

2   over, under or across the Property for maintenance, operation and repair of any water lines; (v) ,

3   Defendant has no easement or license over, under or across the Property for maintenance,

4   operation and repair of any electric transmission lines to the X-Ray Facility, (vi) Defendant has

5   no easement or license over or across the Property for the use of the railroad spur track leading to

6   the X-Ray Facility; (vii) in the event that Defendant has some right to use the spur track across

7   the Property, it can only be used by Defendant for the conduct of operations at its X-Ray Facility;

8   (viii) Defendant has no easement, license or right to transmit its sewage system wastes from the

9   X-Ray Facility into Plaintiff's sewage system; and (ix) Defendant does not have the right to

10  convey any purported easements across the Property to a third party.

11  **All Claims for Relief:**

12      1.    For its costs of suit; and

13      2.    For such further relief as the Court deems just.

14  Dated: August 22, 2007                STEIN & LUBIN LLP

15

16              By:

17                Manuel A. Martinez
                  Attorneys for Plaintiffs

18                CCIP, L.P. and Contra Costa Industrial Park II, L.P.

19

20

21

22

23

24

25

26

27

28

**Exhibit A**

LEGAL DESCRIPTION

UNINCORPORATED AREA

**PARCEL ONE:**

PARCELS A AND B, AS SHOWN ON SUBDIVISION MS 74-85, AS FILED ON NOVEMBER 26,1986, IN BOOK 125 OF PARCEL MAPS, PAGES 12 THROUGH 14, INCLUSIVE, OFFICIAL RECORDS.

ASSESSOR'S PARCEL NOS. 073-230-032
                       073-230-033

**PARCEL TWO:**

A PORTION OF THE RANCHO LOS MEDAÑOS, CONTRA COSTA COUNTY, CALIFORNIA, DESCRIBED AS FOLLOWS:

BEGINNING AT THE MOST NORTHERLY CORNER OF THAT CERTAIN PARCEL OF LAND CONVEYED BY C. A. HOOPER & CO., A CORPORATION, TO DEFENSE PLANT CORPORATION, CREATED BY RECONSTRUCTION FINANCE CORPORATION ACT, AS AMENDED, BY DEED DATED DECEMBER 4, 1942, RECORDED DECEMBER 30, 1942, IN BOOK 706 OF OFFICIAL RECORDS, PAGE 390, RECORDS OF CONTRA COSTA COUNTY, SAID POINT BEING ON THE SOUTHERLY LINE OF THE ATCHISON, TOPEKA AND SANTA FE RAILROAD 100 FOOT MAIN LINE RIGHT OF WAY; THENCE FROM SAID POINT OF BEGINNING, NORTH 74° 27' WEST ALONG SAID RAILROAD RIGHT OF WAY LINE 530.58 FEET; THENCE LEAVING SAID LINE, SOUTH 18° 52' 09" WEST, 450.00 FEET; THENCE NORTH 74° 27' WEST 454.97 FEET TO A POINT ON THE EASTERLY LINE OF LOVERIDGE ROAD (A COUNTY ROAD 80 FEET IN WIDTH); THENCE SOUTH 18° 52' 09" WEST ALONG SAID EASTERLY LINE, 727.02 FEET TO A POINT IN A NORTHERLY LINE OF SAID DEFENSE PLANT CORPORATION PARCEL (706 O.R. 390); THENCE ALONG THE BOUNDARY OF SAID DEFENSE PLANT CORPORATION PARCEL AS FOLLOWS: SOUTH 71° 07' 51" EAST, 1365.09 FEET; THENCE ON A CURVE TO THE LEFT WITH A RADIUS OF 350 FEET, THE CENTER OF WHICH BEARS NORTH 32° 02' 51" WEST, AN ARC DISTANCE OF 247.30 FEET; THENCE TANGENT TO SAID CURVE NORTH 17° 28' 10" EAST, 486.72 FEET; THENCE ON A CURVE TO THE LEFT WITH A RADIUS OF 539.36 FEET, TANGENT TO THE LAST PRECEDING COURSE, AN ARC DISTANCE OF 741.74 FEET TO THE POINT OF BEGINNING.

EXCEPTING THEREFROM, THAT PORTION DESCRIBED AS PARCEL A IN THE DEED TO USS-POSCO INDUSTRIES, A CALIFORNIA GENERAL PARTNERSHIP, RECORDED MARCH 31, 1986, BOOK 12809, PAGE 167, OFFICIAL RECORDS.

ASSESSOR'S PARCEL NOS. 073-230-031 (PORTION)
                       073-230-010

**PARCEL THREE:**

PORTION OF THE RANCHO LOS MEDAÑOS, DESCRIBED AS FOLLOWS:

BEGINNING ON THE EAST LINE OF THE COUNTY ROAD KNOWN AS LOVERIDGE ROAD, AT THE SOUTH LINE OF THE RIGHT OF WAY OF THE ATCHISON, TOPEKA AND SANTA FE RAILWAY; THENCE FROM SAID POINT OF BEGINNING, SOUTH 18° 45' 15" WEST ALONG SAID EAST LINE, 200 FEET TO A NORTH LINE OF THE PARCEL OF LAND DESCRIBED IN THE DEED FROM EDWARD J. ROBERTS, ET AL, TO CHARLES L. ROBERTS, ET AL, DATED FEBRUARY 20, 1945, RECORDED MARCH 27, 1945,, IN BOOK 807 OF OFFICIAL RECORDS, PAGE 429; THENCE SOUTH 74° 34' EAST ALONG SAID NORTH LINE, 204.97 FEET TO A WEST LINE OF SAID ROBERTS PARCEL (807 OR 429); THENCE NORTH 18° 45' 15" EAST ALONG SAID WEST LINE, 200 FEET TO THE SOUTH LINE OF SAID RIGHT OF WAY OF THE ATCHISON, TOPEKA AND SANTA FE RAILWAY; THENCE NORTH 74° 34' WEST, ALONG SAID SOUTH LINE, 204.97 FEET TO THE POINT OF BEGINNING.

ASSESSOR'S PARCEL NO. 073-230-031 (PORTION)

Exhibit A

LEGAL DESCRIPTION

**PARCEL FOUR:**

PORTION OF THE RANCHO LOS MEDANOS, DESCRIBED AS FOLLOWS:

BEGINNING ON THE EAST LINE OF THE COUNTY ROAD KNOWN AS LOVERIDGE ROAD, AT THE SOUTH LINE OF THE PARCEL OF LAND DESCRIBED AS PARCEL ONE IN THE DEED FROM PETER S. BUGNI, ET AL, TO J. R. BUNDESEN, DATED NOVEMBER 4, 1949, RECORDED NOVEMBER 15, 1949, IN BOOK 1462 OF OFFICIAL RECORDS, PAGE 130; THENCE FROM SAID POINT OF BEGINNING, SOUTH 18° 45' 15" WEST ALONG SAID EAST LINE 150 FEET TO A NORTH LINE OF THE PARCEL OF LAND DESCRIBED AS PARCEL THREE IN SAID BUNDESEN DEED (1462 OR 130); THENCE SOUTH 74° 34' EAST ALONG SAID NORTH LINE, 304.97 FEET TO A WEST LINE OF SAID BUNDESEN PARCEL THREE (1462 OR 130); THENCE NORTH 18° 45' 15" EAST ALONG SAID WEST LINE, 350 FEET TO THE SOUTH LINE OF THE RIGHT OF WAY OF THE ATCHISON, TOPEKA AND SANTA FE RAILWAY; THENCE NORTH 74° 34' WEST ALONG SAID SOUTH LINE, 100 FEET TO THE EAST LINE OF SAID BUNDESEN PARCEL ONE (1462 OR 130); THENCE SOUTH 18° 45' 15" WEST ALONG SAID EAST LINE, 200 FEET TO THE SOUTH LINE OF SAID BUNDESEN PARCEL ONE (1462 OR 130); THENCE NORTH 74° 34' WEST ALONG SAID SOUTH LINE 204.97 FEET TO THE POINT OF BEGINNING.

ASSESSOR'S PARCEL NO. 073-230-031 (PORTION)

**PARCEL FIVE:**

PORTION OF THE RANCHO LOS MEDANOS, DESCRIBED AS FOLLOWS:

BEGINNING ON THE EAST LINE OF THE COUNTY ROAD KNOWN AS LOVERIDGE ROAD, AT THE SOUTH LINE OF THE PARCEL OF LAND DESCRIBED IN THE DEED FROM EDWARD J. ROBERTS, ET AL, TO CHARLES L. ROBERTS, ET AL, DATED FEBRUARY 20, 1945, RECORDED MARCH 27, 1945, IN BOOK 807 OF OFFICIAL RECORDS, PAGE 429; THENCE FROM SAID POINT OF BEGINNING, SOUTH 18° 45' 15" WEST ALONG SAID EAST LINE, 100 FEET TO A NORTH LINE OF THE 33.875 ACRE PARCEL OF LAND DESCRIBED AS PARCEL THREE IN THE DEED FROM C. A. HOOPER & CO., TO THE ANGLO CALIFORNIA NATIONAL BANK OF SAN FRANCISCO, DATED MARCH 11, 1947, RECORDED MARCH 12, 1947, IN BOOK 1071 OF OFFICIAL RECORDS, PAGE 41; THENCE SOUTH 74° 34' EAST ALONG SAID NORTH LINE, 454.97 FEET TO A WEST LINE OF SAID 33.875 ACRE PARCEL; THENCE NORTH 18° 45' 15" EAST ALONG SAID WEST LINE, 450 FEET TO THE SOUTH LINE OF THE RIGHT OF WAY OF THE ATCHISON, TOPEKA AND SANTA FE RAILWAY; THENCE NORTH 74° 34' WEST ALONG SAID SOUTH LINE, 150 FEET TO THE EAST LINE OF SAID ROBERTS PARCEL (807 OR 429); THENCE SOUTH 18° 45' 15" WEST ALONG SAID EAST LINE, 350 FEET TO THE SOUTH LINE OF SAID ROBERTS PARCEL (807 OR 429); THENCE NORTH 74° 34' WEST ALONG SAID SOUTH LINE, 304.97 FEET TO THE POINT OF BEGINNING.

ASSESSOR'S PARCEL NO. 073-230-031 (PORTION)

**PARCEL SIX:**

PARCELS B AND C, AS SHOWN ON PARCEL MAP MS 28-88, FILED SEPTEMBER 30, 1988, IN BOOK 136 OF PARCEL MAPS, PAGE 1, CONTRA COSTA COUNTY RECORDS.

ASSESSOR'S PARCEL NOS. 073-200-014 AND 073-200-015
(FORMERLY 073-200-012 - PORTION)

**Exhibit B**

NOV 14 1967

74740

BOOK 5450 PG 205

## GRANT OF EASEMENT

NF(R): 4413

THIS INDENTURE, made the 27th day of September, 1967 between UNITED STATES STEEL CORPORATION, a Delaware corporation, herein called GRANTOR, and the UNITED STATES OF AMERICA, herein called the GOVERNMENT, acting by and through the Department of the Navy.

WHEREAS, GRANTOR owns that certain real property formerly the Pacific Ordnance Steel Foundry located on Loveridge Road, Contra Costa County, California, now known as United States Steel Corporation's Pipe Mill, Pittsburg Works, and

WHEREAS, the GOVERNMENT owns the U. S. Naval X-Ray Facility, being a facility of the U. S. Naval Weapons Station, Concord, California, which is surrounded by said Pipe Mill except for an access road recently relocated and constructed by GRANTOR, and

WHEREAS, the GOVERNMENT needs to use said access road in connection with the use, operation, and enjoyment of said X-Ray Facility and has requested the conveyance of an easement therefor;

NOW, This Indenture Witnesseth that, in consideration of the mutual benefits to be derived, GRANTOR hereby grants unto the GOVERNMENT an easement in perpetuity in, to, upon, and over that certain roadway which is described below, said easement being for the purpose of ingress and egress to and from said X-Ray Facility. It is agreed and understood that the easement thus granted is not an exclusive easement but is subject to the use by GRANTOR of said roadway, which right is hereby expressly reserved:

A roadway 20 feet or more in width, 10 feet or more wide on each side of the following described center line:

Beginning at a point on the westerly boundary of Parcel 1 as said parcel is described in the Quitclaim Deed from Ludlow Valve Manufacturing Co., Inc. to United States Steel Corporation dated August 29, 1963, and recorded in Book 4442, Official Records of Contra Costa County, at Page 748, on September 3, 1963, N 18° 45' 15" E, 407.0 feet, more or less from the northerly boundary of the State Highway (60 feet wide) leading from Pittsburg to Antioch and from said point running S 71° 14' 45" E, 178.75 feet, thence on a tangent curve to the left having a radius of 70.0 feet and an included angle of 90° and length of 109.96 feet; thence tangent to said curve N 18° 45' 15" E, 479 feet, thence on a tangent curve to the right having a radius of 80 feet and an included angle of 90° and length of 125.66 feet; thence tangent to said curve S 71° 14' 45" E, 914.71 feet; thence on a tangent curve to the right having a radius of 80 feet and an included angle of 48° 21' 42" and length of 67.53 feet; thence tangent to said curve S 22° 53' 03" E, 165 feet, more or less, to the northwesterly boundary line of the parcel described as the exception to Parcel 1 as described in said deed.

THIS EASEMENT is granted subject to the following terms and conditions:

10832

-1-

ORIGINAL

NF(R)- 4413                    BOOK 5495 PG 266

(1) Said roadway shall at all times be maintained as a surfaced roadway not less than 20 feet wide with design characteristics and specifications at least equal to the roadway formerly used by the GOVERNMENT as a means of access to said X-Ray Facility and reserved to GOVERNMENT in that certain Quitclaim Deed from the United States of America to Qamco, Inc. dated August 14, 1963, and recorded September 3, 1963, in Contra Costa County as Document No. 78232 in Book 4442 at Page 709.

(2) The roadway has been constructed by GRANTR at GRANTOR'S expense and GRANTOR will maintain the same in good condition at GRANTOR'S expense. All work in connection with the construction and maintenance of said roadway shall be done without cost or expense to the GOVERNMENT and in a good and workmanlike manner.

(3) GRANTOR shall have the right to relocate said roadway to such new location or locations as GRANTOR may designate; provided, however, that

(a) the roadway as relocated shall provide a reasonably equivalent access of equal width to either of the public highways lying adjacent to the westerly and southerly boundaries of said Pipe Mill,

(b) GRANTOR shall pay all costs relating to said relocation,

(c) GRANTOR shall obtain the written consent of GOVERNMENT to such relocation, which said consent shall not be unreasonably withheld.

GRANTOR'S right of relocation herein reserved shall be deemed appurtenant to said Pipe Mill property and the right of relocation as well as the obligation to maintain the roadway as relocated shall pass to subsequent owners of the same.

IN WITNESS WHEREOF, GRANTOR has caused this instrument to be executed the day and year first above written.

UNITED STATES STEEL CORPORATION

By _____
            Vice President

Attest:    SEAL AFFIXED

NF(R)- 4413                    BOOK 5495 PG 267

known to me to be the Vice President and Assistant Secretary of the
corporation that executed the within instrument, and acknowledged
to me that such corporation executed the same.

*Margaret Mayer*

NOTARY PUBLIC

SEAL AFFIXED

Residing at MARGARET MAYER, Notary Public
PITTSBURGH, ALLEGHENY COUNTY, PA.
MY COMMISSION EXPIRES
My Commission Expires May 16 1970
May 16, 1970

RECORDED AT REQUEST OF

*U. S. Steel Corp*

'67 NOV 14 AM 10: 11

OFFICIAL RECORDS
CONTRA COSTA CO. CAL.
W. T. PAASCH, RECORDER
FEE $ 3 loo pd

**Exhibit C**

**74739**
NOV 14 1967

BOOK **5495** PG **263**

GRANT OF EASEMENT                NF(R)- 4 4 1 2

THIS INDENTURE, made the 27th day of September , 1967 ,
between UNITED STATES STEEL CORPORATION, a Delaware corporation,
herein called GRANTOR, and the UNITED STATES OF AMERICA, herein called
the GOVERNMENT, acting by and through the Department of the Navy.

WHEREAS, GRANTOR owns that certain real property, formerly
the Pacific Ordnance Steel Foundry, located on Loveridge Road, Contra
Costa County, California, now known as United States Steel Corporation's
Pipe Mill, Pittsburg Works, and

WHEREAS, the GOVERNMENT has requested the conveyance of an
easement for the maintenance, operation, repair and replacement of a
1-1/4" underground gas line through and across that portion of said
Pipe Mill property hereinafter described;

NOW, This Indenture Witnesseth that, in consideration of
the mutual benefits to be derived, GRANTOR hereby grants unto the
GOVERNMENT an easement in perpetuity for the maintenance, operation,
repair and replacement of 1-1/4" underground gas line, herein called
the LINE, such easement to extend through and across and be confined
to that portion of said Pipe Mill, herein called the PREMISES, which
is described as follows:

An easement, ten (10) feet in width, for the installa-
tion, use and maintenance of a 1-1/4" gas line, being
5 feet wide on each side of the center line described
as follows:

Beginning at a point S. 18° 45' 15" W., 3.00 feet along
the westerly boundary line of Parcel 1 as said parcel
is described in the Quitclaim Deed from Ludlow Valve Manu-
facturing Co., Inc. to United States Steel Corporation
dated August 29, 1963, and recorded in Book 4442,
Official Records of Contra Costa County, at Page 748,
on September 3, 1963, from the first-described northerly
line of Parcel 1 in said deed, and running thence S. 71°
14' 45" E., 54.20 feet to Pacific Gas and Electric Co.
Riser; thence S. 18° 45' 15" W., 3.83 feet; thence S. 71°
14' 45" E., 2.50 feet to Navy Meter; thence continuing
S. 71° 14' 45" E., 1.08 feet to Navy Riser; thence S. 19°
09' 45" E., 34.12 feet to a point, which point is N. 18°
45' 15" E., 6.75 feet from the westerly extension of the
southerly boundary of the roadway easement described as
Reservation "A" from Parcel 1 as described in aforesaid
deed, and running thence S. 71° 14' 45" E., a distance
of approximately 1200 feet to the northerly extension of
a line parallel to and 6.75 feet distant northeasterly
from the preceding course in the description of Reser-
vation "A", thence following said Line S. 22° 53' 03" E.,
to the boundary line of the parcel described as the
exception to Parcel 1 in said deed.

THIS EASEMENT is granted subject to the following terms and
conditions:

(1) All work in connection with the operation, repair and
replacement of the LINE shall be done without cost or expense to
GRANTOR and in a good and workmanlike manner.

(2) GRANTEE shall maintain the LINE in good condition at
all times and shall promptly make all repairs thereto which may be

10839 m 1 000036 dy
505/m m 3017

ORIGINAL        B 2174 TANK/VIC 2/3/68
                Exhibit "B"        Attachment 9

Exhibit C

NF(R)- 4412

BOOK 5495 PG 264

necessary for the preservation of the condition of the PREMISES and the continued operation and maintenance of the LINE.

(3) The GOVERNMENT'S rights hereunder shall be subject to such reasonable requirements relating to the exercise thereof as may be imposed by GRANTOR in order to insure non-interference with GRANTOR'S activities at said Pipe Mill.

(4) All or any part of the easement herein granted may be terminated upon failure on the part of the GOVERNMENT to comply with any of the terms and conditions of this grant within thirty (30) days after GRANTOR shall have notified the GOVERNMENT in writing of such failure; upon abandonment of the rights granted herein; or upon non-use of such rights for a period of two consecutive years.

(5) Upon termination of the easement granted herein, the GOVERNMENT, if desired by GRANTOR, shall remove any and all improvements installed or constructed hereunder and restore the PREMISES the same or as good condition as that which existed prior to the exercise by the GOVERNMENT of its rights hereunder, such restoration to be effected to the satisfaction of GRANTOR or its authorized representative.

(6) GRANTOR may use the PREMISES which are the subject of this easement for any purpose which does not create an unreasonable interference with the use or enjoyment by the GOVERNMENT of the easement rights granted herein.

IN WITNESS WHEREOF, GRANTOR has caused this instrument to be executed the day and year first above written.

UNITED STATES STEEL CORPORATION

By _____
                Vice President

Attest: SEAL AFFIXED

_____
Assistant Secretary

RECORDED AT REQUEST OF

U. S. Steel Corp.

'67 NOV 16  AM 10: 11

OFFICIAL RECORDS
CONTRA COSTA CO. CAL.
W.T. PAASCH, RECORDER
FEES 2.80 pd

STATE OF PENNSYLVANIA )
                       ) ss.:
COUNTY OF ALLEGHENY    )

On this 27th day of     September     in the year 1967, before me, a notary public in and for said County and State, personally appeared     T. W. Hunter     and     A. F. King, Jr.     known to me to be the Vice President and Assistant Secretary of the corporation that executed the within instrument, and acknowledged to me that such corporation executed the same.

SEAL AFFIXED

_____
NOTARY PUBLIC
Residing at Pittsburgh, Penna.
My Commission Expires:
MARGARET MAYER, Notary Public
PITTSBURGH, ALLEGHENY COUNTY, PA.
MY COMMISSION EXPIRES
MAY 14, 1973

ORIGINAL    · END OF DOCUMENT ·

-2-

**Exhibit D**

NOTE FOR EXHIBIT "A" TO THIS DOCUMENT SEE 3F.
"    "    "B"  "    "    "    "  3H.
"    "    "C"  "    "    "    "  3H6

NF(R)- 1 1 4 2

AGREEMENT FOR USE AND EXCHANGE OF
REALTY INTERESTS AND FACILITIES

THIS AGREEMENT, made and entered into this 10th day of
May , 19 67 , between the UNITED STATES OF AMERICA,
acting by and through the DEPARTMENT OF THE NAVY (hereinafter called
"Government"), under authority of the Federal Property and Adminis-
trative Services Act of 1949, as amended, and Regulations of General
Services Administration issued under said Act, particularly FPMR
101-47.302-2(a)(1), and UNITED STATES STEEL CORPORATION, a corporation
organized and existing under and by virtue of the laws of the State
of Delaware (hereinafter called "Steel Company"),

WITNESSETH:

WHEREAS, by quitclaim deed, dated 14 August 1963, recorded
3 September 1963, the Government transferred to the Steel Company's
predecessor in interest all of its right, title and interest in and to
the former Pacific Steel Foundry property on Loveridge Road, Contra
Costa County, California, reserving, however, to the Government
certain easements described in said quitclaim as reservations
numbered a, b, c, d, e, and f, which easements are now surplus to
the needs of the Government; and

WHEREAS, the following facilities installed on the property
are also surplus to the needs of the Government:  (1) underground
12" water line; (2) underground storm water drainage system, the
location of said facilities being more particularly described in
Exhibit "A" to this agreement; and

WHEREAS, the Steel Company has requested that the easements
and facilities referred to in the preceding preambles, and described
in Exhibit "A" to this agreement, be quitclaimed to it, reserving to
the Government joint use of certain facilities, and the Government
is willing to do so in consideration of the performance by the Steel
Company of the covenants hereinafter set forth.

NOW, THEREFORE, in consideration of the premises, the
parties hereto do mutually covenant and agree as follows:

I - OBLIGATIONS OF THE GOVERNMENT

The Government will quitclaim to the Steel Company all of
its right, title and interest in and to the easements and facilities
referred to in the preceding preambles, said easements being more
particularly described in quitclaim attached hereto marked
Exhibit "A".

II - OBLIGATIONS OF STEEL COMPANY

a.  Steel Company agrees to construct and install a 6" water
line to extend from the City of Pittsburg's water main, lying east of
said former foundry property, to the following point, to-wit:

A point located within the boundaries of the Parcel
described as the exception to Parcel 1 as said
parcel is described in the Quitclaim Deed from
Ludlow Valve Manufacturing Co., Inc. to United
States Steel Corporation, dated August 29, 1963,
and recorded in Book 4442, Official Records of
Contra Costa County, at Page 748, on September 3,
1963, said point being located S 18° 45' 15" W.
377.87 feet from the first-described northerly

ATTACHMENT 6

10820
PC _____ P/A _____ 24
Code BOS/11 File 345
Encl. AttyGen Opinion of _____
82179 ToNAVFEC 2/13/68

Exhibit D                    ORIGINAL

line, or its easterly extension, of Parcel 1 as described in said deed, and S 71° 14' 45" E, 1380.58 feet from the westerly boundary line of Parcel 1 as described in said deed.

Said 6" water line shall be constructed and installed in accordance with City of Pittsburg specifications. Steel Company shall transfer and convey title to said 6" water line to the City of Pittsburg upon completion thereof, and Steel Company agrees to convey to the City of Pittsburg a suitable easement across its land to enable the City of Pittsburg to maintain, operate, repair and replace said 6" water line. Steel Company further agrees, other provisions hereof to the contrary notwithstanding, that water service now being furnished to Government's X-Ray Facility through the existing 6" water line will not be terminated by any action of Steel Company until the new 6" water line herein provided for shall have been accepted by the City of Pittsburg and proves operable in all respects.

b. Steel Company will grant to Government a permanent easement for an underground gas line, said easement being more particularly described in easement deed attached hereto, marked Exhibit "B".

c. Steel Company will grant to Government a permanent easement for joint use of a roadway, said easement being more particularly described in easement deed attached hereto, marked Exhibit "C".

d. Steel Company will convey to Pacific Gas and Electric Company an easement across the hereinafter described piece or parcel of land for maintenance, operation and repair of electric transmission lines from Pacific Gas and Electric Company's property, lying east of said former foundry, to the X-Ray Facility, to wit:

An easement ten (10) feet in width for the use and maintenance of an electric power line, being 5 feet wide on each side of the following described center line:

Beginning at a point on the easterly boundary line of Parcel 1 as described in the Quitclaim Deed from Ludlow Valve Manufacturing Co., Inc. to United States Steel Corporation, dated August 29, 1963, and recorded in Book 4442, Official Records of Contra Costa County, at Page 748, on September 3, 1963, said point being N 17° 21' 16" E, 546.12 feet, more or less, from the northerly line of the California State Highway (60 feet wide) extending from Pittsburg to Antioch, and running thence N 04° 13' 32" E, 313.17 feet, more or less, to the southeasterly boundary line of the parcel described as the exception to Parcel 1 in said deed; the side lines of said easement to be lengthened or shortened as necessary.

e. Steel Company will permit Government to make such use of the trackage leading from the Atchison, Topeka & Santa Fe Railroad's right of way to the X-Ray Facility, jointly with Steel Company, as may be necessary to Government in the conduct of operations at its X-Ray Facility and Steel Company does hereby grant Government an irrevocable license to make such use. Steel Company will assume responsibility for the upkeep and maintenance of said trackage and shall permit Government to make use of the same under the license hereby granted without charge to Government.

2

ORIGINAL

NF(R)- 1 1 4 2

f. Steel Company will remove the gates and fencing now extending along or across the present forty foot wide roadway extending from Loveridge Road to Government's X-Ray Facility, disposing of the same as it sees fit inasmuch as the Government shall no longer have any use for said gates and fencing and agrees that Steel Company may have and make use thereof.

g. Steel Company will install sewage facilities necessary to handle sanitary wastes from new pipe mill facilities which Steel Company is constructing on the former foundry property. Sanitary wastes will be transmitted by force main to the City of Pittsburg's Sewage Disposal Plant under a contract heretofore entered into between the City of Pittsburg and Steel Company dated December 7, 1962. Steel Company has gained the City of Pittsburg's assent to receive at said Sewage Disposal Plant from Steel Company's force main sanitary and process wastes from Government's X-Ray Facility, in addition to sanitary waste from Steel Company's facilities, and Steel Company will, at the point where the existing sewer line crosses the boundary line separating Government's property from Steel Company's property, receive into its sewage system for transmission and disposition as aforesaid sanitary and process wastes from said X-Ray Facility at no cost to Government. Steel Company will amend its contract with the City of Pittsburg to cover receipt of these further wastes at no additional cost to Government.

The hereinabove described instruments will be placed in escrow with the Title Insurance and Trust Company, San Francisco, with appropriate instructions for recording. Escrow fees, documentary stamps, and recording fees will be at the cost of the Steel Company, and also the cost of such title insurance as the Steel Company may require.

No member of or delegate to Congress, or resident commissioner, shall be admitted to any share or part of this agreement or to any benefit that may arise therefrom; but this provision shall not be construed to extend to this agreement if made with a corporation for its general benefit.

Steel Company warrants that no person or selling agency has been employed or retained to solicit or secure this agreement upon any agreement or understanding for a commission, percentage, brokerage, or contingent fee, excepting bona fide employees or bona fide established commercial or selling agencies maintained by Steel Company for the purpose of securing business. For breach or violation of this warranty Government shall have the right to annul this agreement without liability. Government agrees that this covenant shall not apply to licensed real estate agents performing their normal functions.

Government may, by written notice to Steel Company, terminate the rights of Steel Company under this agreement if it is found, after notice and hearing by the Secretary of the Navy or his duly authorized representative, that gratuities (in the form of entertainment, gifts, or otherwise) were offered or given by Steel Company, or any agent or representative of Steel Company, to any officer or employee of Government with a view toward securing an agreement or securing favorable treatment with respect to the awarding or amendment, or the making of any determination with respect to the performing of such agreement; provided, that the existence of the facts upon which the Secretary or his duly authorized representative makes such findings shall be in issue and may be reviewed in any competent court. In the event this agreement is so terminated, Government shall be entitled (i) to pursue the same remedies against Steel Company as it could pursue in the event of a breach of the contract by Steel Company, and (ii) as a penalty in addition to any other damages to which it may be entitled by law, to exemplary damages in an amount (as determined by the Secretary or his duly authorized representative)

3

ORIGINAL

NF(R)- 1 1 4 2

which shall be not less than three or more than ten times the cost
incurred by Steel Company in providing such gratuities to any such
officer or employee.  The rights and remedies of Government provided
in this clause shall not be exclusive and are in addition to any
other rights and remedies provided in law or under this agreement.

　　　　IN WITNESS WHEREOF, this agreement is executed as of the
date first hereinabove written.

　　　　　　　　　　　　　　UNITED STATES OF AMERICA

　　　　　　　　　　　By _____
　　　　　　　　　　　　　W. E. DAVIDSON, CAPT, CEC, USN
　　　　　　　　　　　　　By direction of the Commander,
　　　　　　　　　　　　　Naval Facilities Engineering
　　　　　　　　　　　　　Command, acting under the
　　　　　　　　　　　　　direction of the Secretary of
　　　　　　　　　　　　　the Navy


　　　　　　　　　　　　　　UNITED STATES STEEL CORPORATION

　　　　　　　　　　　By _____
　　　　　　　　　　　　　J. D. McCall
　　　　　　　　　　　　　Vice President--Sheet & Tin Operations

ATTEST:

_____
A. F. King, Jr.
Assistant Secretary

4

ORIGINAL